IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIANNA J., on behalf of I.J., a minor child,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>KILOLO KIJAKAZI,<br>　Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. 2:21-cv-00686-CMR<br><br>MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION DENYING DISABILITY BENEFITS<br><br>Magistrate Judge Cecilia M. Romero |

The parties in this case have consented to the undersigned conducting all proceedings (ECF 11). 28 U.S.C. § 636(c). Brianna J., on behalf of minor child I.J. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying Plaintiff's claim for supplemental security income (SSI) under Title XVI of the Social Security Act (Act). The court finds that oral argument is not necessary and will decide this matter on the basis of written memoranda. *See* DUCivR 7-1(g). After careful review of the entire record and the parties' briefs, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free from reversible error. For the reasons set forth below, the court hereby AFFIRMS the decision of the Commissioner.

### I.　　BACKGROUND

**A.　Factual Background**

When Plaintiff was in first grade in May 2017, testing indicated an intellectual disability and that he struggled to pay attention and focus on the test (Certified Administrative Transcript (Tr.), ECF 14 at 274). Plaintiff had difficulty reading and writing (Tr. 275). Plaintiff was able to

listen during testing, stay on task, finish his writing, and keep himself occupied, but his teacher reported this was not common behavior (Tr. 276). At the end of second grade, Plaintiff was placed on an individualized education program (IEP) (Tr. 277–80). The IEP indicated Plaintiff's disability impacted his ability to read, do math, communicate, speak, and behave in the classroom (Tr. 277–78). Plaintiff had difficulty staying on task and following teacher instructions (Tr. 278). During third grade, Plaintiff's mother completed a function report in March 2019 indicating Plaintiff had a limited ability to pay attention and stick with a task (Tr. 159–68). Plaintiff's mother completed a second function report later in 2019 that similarly indicated that Plaintiff did not finish tasks (Tr. 204–12). In April 2019, a third-grade IEP indicated Plaintiff had been "working really hard" in reading and writing but was performing well below grade level overall (Tr. 296). Plaintiff was able to stay on task 73% of the time in comparison to peers who were at 93%, and he required redirection once every three minutes and nine redirections a day (Tr. 297).

Andrew J. Nichols, Ph.D., performed a consultative examination in June 2019 when Plaintiff was almost nine years old (Tr. 316–20). Plaintiff was very well behaved, could name his teachers, had a clear speech impediment, mixed pronouns, conversed and interacted easily, and had no difficulty understanding and following assessment instructions but wanted to return to his mother or play with toys (Tr. 318). Plaintiff's scores on the Wechsler Intelligence Scale for Children – Fifth Edition showed a full-scale IQ of 76, which is borderline. This score was markedly impacted by Plaintiff's relative weakness in working memory and processing speed (Tr. 319). Plaintiff had individual component scores that were mostly low average (80 or above) (Tr. 319). Dr. Nichols diagnosed a learning disorder (Tr. 320). Dr. Nichols opined that Plaintiff's concentration and task persistence were a potential area of weakness, noting that Plaintiff "appeared to lose interest somewhat with the WISC-V as the measure neared completion (asking

several times when he would be able to return to his mother)" (Tr. 320). Dr. Nichols then stated: "Otherwise, there is no indication" that Plaintiff "should be expected to have difficulty tolerating a routine school day or engaging in remediation efforts with caregivers" (Tr. 320). Dr. Nichols further opined Plaintiff's "ability to follow 2–4 step instructions is likely to be suspect, especially in regard to verbally-mediated information" and that he would benefit from applied structure and learning strategies and needed "close observation and collaboration between" family and academic care providers (Tr. 320). That same month, Lois Huebner, Ph.D., a state agency psychological consultant, opined that Plaintiff was not disabled by his intellectual disorder and had less than marked limitations in acquiring and using information and attending and completing tasks (Tr. 50–55).

In October 2019, Nicole Woodmansee, Plaintiff's fourth grade special education teacher, wrote that he was being instructed at first grade level for reading, math, and writing (Tr. 214). Ms. Woodmansee indicated that Plaintiff had mostly very serious problems in the domains of acquiring and using information and attending and completing tasks (Tr. 216–17). As to acquiring and using information, she wrote that Plaintiff struggles significantly with independent work, requires one-to-one support for new skills and practice, and will often try to get out of work that is too difficult with a variety of difficult behaviors (Tr. 215). With respect to attending and completing tasks, she wrote that Plaintiff cannot perform multi-step instructions, frequently distracts his group or peers, and behaves similarly to six- to seven-year-old students (Tr. 216). The following month, Julia Jacobs, Psy.D., a second state agency psychological consultant, opined that Plaintiff was not disabled by his intellectual disorder, had a less than marked limitation in acquiring and using information, and had a marked limitation in attending and completing tasks (Tr. 59–62, 64-66).

Two years later, in January 2021, an IEP indicated Plaintiff was in the fifth grade (Tr. 324). Plaintiff could not read at grade level; could write sentences with a subject and a verb but struggled with spelling and punctuation; could do simple addition, solve word problems, and accurately measure object lengths; struggled with multi-set addition, subtraction, and finding missing variables in subtraction; and had some communication problems with /r/ variations and regular past tense verbs with "t" endings (Tr. 324). A June 2021 IEP progress report indicated Plaintiff was making sufficient progress with the bulk of his goals (Tr. 321–23). The progress report stated: "On his own," Plaintiff tries really hard to stay focused and on task, but he was easily influenced by the behaviors of other students, had made great progress in speech and good progress in math, and was beginning to comprehend more in reading (Tr. 321–23).

B. Procedural Background

Born in 2010, Plaintiff was a school-age child when he filed his claim and at the time of the ALJ's July 2021 decision (Tr. 13, 29). *See* 20 C.F.R. § 416.926a(g)(2)(iv). Plaintiff claimed he was disabled due to a learning disorder (Tr. 50). After a hearing (Tr. 24–47), an administrative law judge (ALJ) issued a decision finding that Plaintiff was not disabled (Tr. 9–23). The ALJ followed the three-step sequential evaluation process for childhood SSI claims (Tr. 12–19). 20 C.F.R. § 416.924 (outlining the process). The ALJ found that Plaintiff had a severe impairment of intellectual disorder, but that this impairment did not meet, medically equal, or functionally equal a listing (Tr. 13–19). As such, the ALJ concluded that Plaintiff was not disabled (Tr. 19). The ALJ therefore concluded that Plaintiff was not disabled under the Act (Tr. 19). The Appeals Council denied Plaintiff's request for review (Tr. 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981; 422.210(a). This appeal followed.

## II. LEGAL STANDARDS

### A. Disability Determination

"A child who applies for [SSI] is 'disabled' if the child is not engaged in substantial gainful activity and has a medically determinable physical or mental impairment or combination of impairments that results in 'marked and severe functional limitations.'" Social Security Ruling (SSR) 09-1p, 2009 WL 396031, at *1 (citing 20 C.F.R. § 416.906) (footnotes omitted). "This means that the impairment(s) must meet or medically equal a [listing], or functionally equal the listing (also referred to as 'functional equivalence')." *Id.* at *1 (citing 20 C.F.R. §§ 416.924, 416.926a) (footnotes omitted). SSR 09-1p provides:

> To functionally equal the listings, an impairment(s) must be of listing-level severity; that is, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 CFR 416.926a(a). Domains are broad areas of functioning intended to capture all of what a child can or cannot do. We use the following six domains:
>
> (1) Acquiring and using information,
> (2) Attending and completing tasks,
> (3) Interacting and relating with others,
> (4) Moving about and manipulating objects,
> (5) Caring for yourself, and
> (6) Health and physical well-being.

*Id.* at *1 (citing 20 C.F.R. § 416.926a(a), (b)(1)).

### B. Standard of Review

The scope of the Court's review of the Commissioner's final decision is specific and narrow. As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id.* at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Under this deferential standard, this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). As the Supreme Court recently reiterated, "a reviewing court must uphold even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Garland v. Dai*, 141 S. Ct. 1669, 1679 (2021) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

### III. DISCUSSION

Plaintiff does not challenge the ALJ's finding that Plaintiff's impairments did not meet or medically equal a listing (*See* ECF 17, Plaintiff's Opening Brief (Pl. Br.) 6; Tr. 13). Rather, Plaintiff argues that the ALJ should have found that Plaintiff's impairments functionally equaled the listings (Pl. Br. 6–19; Tr. 14–19). The ALJ in this case found that Plaintiff's impairments resulted in only one marked limitation[1]—in acquiring and using information—and no extreme limitations and therefore did not functionally equal the listings (Tr. 14). With respect to acquiring and using information, the ALJ acknowledged that Plaintiff's intellectual disability impacted his ability to perform math, read, and comprehend grade level text (Tr. 16). The ALJ concluded that despite Plaintiff's challenges, he has not shown a marked limitation in other areas, and the evidence supports a less than marked limitation in attending and completing tasks (Tr. 16). Plaintiff argues that the ALJ should have found that Plaintiff's impairments resulted in a marked limitation in attending and completing tasks, which would have resulted in a finding of disability (Pl. Br. 6–

---

[1] The agency defines a marked limitation in a child's case as when a claimant's impairment(s) "interferes seriously" with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). It is also defined as "more than moderate" but "less than extreme." *Id.*

19). The court acknowledges that this is a difficult case because it concerns the impact of an intellectual disability on not only the domain of acquiring and using information, but also attending and completing tasks. However, as explained below, substantial evidence supports the ALJ's finding that despite having a marked limitation in acquiring and using information, Plaintiff had a less than marked limitation in attending and completing tasks (Tr. 14–19).

### A. The ALJ's Finding of a Less than Marked Limitation in Attending and Completing Tasks Is Supported by Substantial Evidence

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well he begins, carries through, and finishes his activities including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h); *see* SSR 09-4p, 2009 WL 396033, at *2. A school-age child should be able to focus his attention in a variety of situations to follow directions, remember and organize his school materials, and complete classroom and homework assignments. 20 C.F.R. § 416.926a(h)(2)(iv). He should be able to concentrate on details and not make careless mistakes in his work (beyond what would be expected of other children his age who do not have impairments). A child should be able to change his activities or routines without distracting himself or others and stay on task and in place when appropriate. He should be able to sustain his attention well enough to participate in group sports, read by himself, and complete family chores. He should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. *Id.*

Examples of limited functioning (but not necessarily marked or extreme) in attending and completing tasks, for a child of any age are:

- being easily startled, distracted, or overreactive to sounds, sights, movements, or touch;
- being slow to focus on or failing to complete activities of interest, such as games or art projects;
- repeatedly becoming side-tracked from activities or interrupting others;
- being easily frustrated and giving up on tasks, including ones he is capable of completing; and
- requiring extra supervision to keep engaged in an activity.

20 C.F.R. § 416.926a(h)(3)(i)–(v).

Here, relying on 20 C.F.R. § 416.926a, the ALJ discussed all of the evidence, and Plaintiff does not point to any uncontroverted or significantly probative evidence that the ALJ did not discuss (Tr. 14–19; Pl. Br. 13–22). *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (citations omitted)). The ALJ acknowledged that Plaintiff's first evaluation and second grade IEP showed difficulty staying on tasks and following teacher instructions (Tr. 16, 274–79). The ALJ noted that shortly thereafter Dr. Hamula recorded that Plaintiff was "doing well," reported he enjoys math, but struggles somewhat with reading, receives school resources, and was not physically active but had no injuries or accidents (Tr. 16, 292–93).[2] The ALJ also found that more recent reports, such as the April 2019 third-grade IEP, indicated that while Plaintiff was performing well below grade level

---

[2] Dr. Hamula indicated Plaintiff was physically active (Tr. 292). It appears that the ALJ's use of the word "not" is a mere scrivener's error and that he intended to indicate Plaintiff was physically active as the ALJ pointed out that he had no injuries or accidents. *Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (finding "a mere scrivener's error" harmless where an ALJ mistakenly wrote that surgeries took place in 2004 instead of 2005).

academically in language and math, he was making progress and attending to tasks, being 73% on task compared to peers who were 93% on task (Tr. 16, 296–97).

The ALJ acknowledged that in June 2019, "Dr. Nichols noted that concentration and task persistence presented as a potential area of weakness" as Plaintiff appeared to lose interest somewhat at the end of the WISC-V measure (Tr. 16, 320). The ALJ found, however, that Dr. Nichols' report "appears consistent with a less than marked" limitation in attending and completing tasks (Tr. 16–17). The ALJ noted that Dr. Nichols concluded: "[o]therwise, there was no indication" that Plaintiff "should be expected to have difficulty tolerating a routine school day or engaging in remediation efforts with caregivers" (Tr. 16–17, 320). The ALJ further acknowledged Dr. Nichols stated that Plaintiff's "ability to follow 2 to 4 step instructions was likely to be suspect, especially in regard to verbally-mediated information," but the ALJ noted that Dr. Nichols then concluded Plaintiff "needs close observation and collaboration between his family and academic care providers, particularly as he transitions into a new school" (Tr. 17, 320).

The ALJ also acknowledged that when Plaintiff was in the fourth grade, Ms. Woodmansee found a very serious problem in attending and completing tasks and stated Plaintiff could not perform multi-step instructions or work independently and distracts his peers (Tr. 16, 216). The ALJ then cited to Plaintiff's January 2021 IEP and June 2021 IEP progress report (Tr. 16, 321–24). The ALJ found that the 2021 IEP showed "ongoing progress with reading, writing, math, and communication" and Plaintiff "was able to complete the tasks and testing of his behaviors (Tr. 16, 324). The ALJ also found that the June 2021 IEP progress report showed "on his own," Plaintiff tried really hard to stay focused and on task but was easily influenced by others (Tr. 16, 321). The ALJ explained that Plaintiff also showed sufficient progress with pronunciation and correctly using words, which the ALJ found showed an ability to complete tasks (Tr. 16, 331). The ALJ also

9

explained that this report showed some progress in writing and sufficient progress in math and reading (Tr. 16, 322–23).

The ALJ then considered the opinions of the state agency medical consultants, Drs. Huebner and Jacobs, that Plaintiff was not disabled by his mental condition and had less than marked limitations in most areas, including acquiring and using information, but Dr. Jacobs concluded Plaintiff had a marked limitation in attending and completing tasks (Tr. 18, 54–55, 64–65). The ALJ found their conclusions mostly persuasive but found Plaintiff more limited—markedly limited—in acquiring and using information due to his performance on IQ tests and below grade-level functioning in certain subjects (Tr. 18; *see, e.g.*, Tr. 296, 319, 234). 20 C.F.R. § 416.920c (explaining how ALJ's consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017).[3] The ALJ agreed with Dr. Huebner that Plaintiff had a less than marked limitation in attending and completing tasks because the 2021 IEPs indicated that Plaintiff was able to attend to tasks and improve school functioning and, except for some loss in focus, Dr. Nichols did not observe many other findings in this area that would limit Plaintiff (Tr. 18, 318–20).

The ALJ also explained that he found Dr. Nichols's opinion persuasive but somewhat vague (Tr. 18, 320). The ALJ explained that Dr. Nichols found that Plaintiff's ability to follow two- to four-step instructions was suspect, especially with regard to verbally-mediated information; he would benefit from applied structure and learning strategies; and he was at risk to demonstrate acting out behaviors (Tr. 320). The ALJ explained that with specialized attention,

---

[3] The agency's revised regulations for evaluating medical opinions and other medical evidence, *see, e.g.*, 20 C.F.R. § 416.920c, apply here. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017), technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017) (final rules); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560 (proposed Sept. 9, 2016).

Plaintiff has shown improvement in overall functioning but still has problems learning information (Tr. 18, 296–98, 321–24). The ALJ further explained that he found Ms. Woodmansee's opinion unpersuasive because it was not consistent with further evidence showing progress and improvement in functioning and Plaintiff showed sufficient progress and the ability to try very hard (Tr. 19, 296–98, 321–24).

Though this is a complicated case, none of the reviewing doctors thought that Plaintiff was disabled by his intellectual disability, or that he had a marked limitation in acquiring and using information (Tr. 54–55, 64–65). The ALJ reasonably exercised his discretion to find Plaintiff had a marked limitation in acquiring and using information and adequately explained his reasoning for agreeing with Dr. Huebner's conclusion that Plaintiff had a less than marked limitation in attending and completing tasks (Tr. 14). While the court might have reached a different outcome had it reweighed the evidence *de novo*, the court finds the ALJ's decision is supported by substantial evidence and therefore affirms. *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004))).

### B. Plaintiff's Arguments Fail to Demonstrate That the ALJ's Decision Lacked Substantial Evidence

Plaintiff makes three arguments in support of his contention that the ALJ's finding of a less than marked limitation in acquiring and using information lacked substantial evidence (Pl. Br. 13–19). For the reasons set forth below, the court finds Plaintiff's arguments to be unpersuasive.

      1. *The ALJ complied with the agency's articulation requirements when discussing Dr. Jacobs' conclusions.*

Plaintiff argues that that the ALJ erred in articulating his reasons for discounting the opinion of state agency reviewer Dr. Jacobs that Plaintiff had a marked limitation in attending and completing tasks (Pl. Br. 13–16; Tr. 62, 64). Under the revised medical regulations, ALJs "will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from [the claimant' s] medical sources" about a claimant's functional abilities or limitations. 20 C.F.R. § 416.920c(a); *Zhu v. Comm' r SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021). Rather, the ALJ need only articulate how persuasive he finds the opinions and prior administrative medical findings. 20 C.F.R. § 416.920c(b); *Zhu*, 2021 WL 2794533, at *5–6. "The most important factors [considered in evaluating persuasiveness] . . . are supportability . . . and consistency," and the ALJ must explain how he considered those factors. 20 C.F.R. § 416.920c(a); *see* 20 C.F.R. § 416.920c(b)(2) & (c)(1)–(2); *Zhu*, 2021 WL 2794533, at *6. The ALJ may, but is generally not required to, discuss other considerations that may bear on persuasiveness, such as the relationship of the medical source to the claimant, the source's area of specialization, and the source's familiarity with SSA's policies and evidentiary requirements. *See* 20 C.F.R. § 416.920a(b)(3) & (c)(3)–(5); *Zhu*, 2021 WL 2794533, at *6 n.9.

As discussed above, the ALJ found the conclusions of the state agency reviewers Drs. Huebner and Jacobs that Plaintiff was not disabled by his intellectual disability mostly persuasive but found Plaintiff more limited—markedly limited—in acquiring and using information due to his performance on IQ tests and below grade-level functioning in certain subjects (Tr. 18, 54–55, 64-65; *see, e.g.*, Tr. 296, 319, 234). Plaintiff does not challenge the ALJ's decision in this regard.

The ALJ agreed with Dr. Huebner that Plaintiff had a less than marked limitation in attending and completing tasks but disagreed with Dr. Jacobs' conclusion of a marked limitation in this area because the 2021 IEPs indicated that Plaintiff was able to attend to tasks and improve school functioning, and except for some loss in focus, Dr. Nichols did not observe many other findings in this area that would limit Plaintiff (Tr. 18, 318–24).

Plaintiff does not argue that the ALJ failed to comply with Section 416.920c's articulation requirements. Rather, he appears to argue that the ALJ discounted Dr. Jacobs' opinion because the ALJ found a marked limitation in acquiring and using information and that same evidence "could not legally lead" to finding a marked limitation attending and competing tasks (Pl. Br. 15). But the ALJ did not say that. He simply found that the evidence indicated that Plaintiff had a less than marked limitation in attending and completing tasks and cited evidence in support of that conclusion (Tr. 18).

Plaintiff next argues the ALJ relied on his third grade performance but not fourth grade performance (Pl. Br. 15–16). This is not accurate. The ALJ cited to exhibits 5F and 8F (Tr. 321, 324), which were from fifth grade, there was no fourth grade IEP, and the ALJ discussed Ms. Woodmansee's fourth grade evaluation in the decision (*see, e.g.*, Tr. 16, 19, 214–16). Even if this were accurate, the ALJ reasonably explained that he found Plaintiff's recent performance reviews more consistent with a less than marked limitation in attending and completing tasks (Tr. 18).

Plaintiff argues that a fifth grade IEP from January 2021 stated Plaintiff's "need for behavioral strategies are addressed in his IEP," and this IEP says "nothing about his inability to follow directions the first time" (Pl. Br. 16 & n.64 (citing Tr. 326)). Plaintiff does not explain how this IEP shows a marked rather than a less than marked limitation in attending and completing tasks, and the court declines Plaintiff's invitation to reweigh the evidence in his favor. *See Lax*,

489 F.3d at 1084 (Tr. 64–65). As the ALJ found, by June 2021 the IEP indicated that on his own Plaintiff tried really hard to stay focused and on task but was easily influenced by the behaviors of others and showed an ability to complete tasks by making sufficient progress with pronunciation and correction words (Tr. 16, 321). The ALJ thus accepted that Plaintiff was limited but not markedly limited in attending and completing tasks. Indeed, that report supports this conclusion, indicating Plaintiff had made sufficient progress (75%) toward his personal development-responsibility goal (Tr. 321).

Plaintiff also argues that during his consultative examination with Dr. Nichols, Plaintiff made several requests to return to his mother or to play with toys, Dr. Nichols thought Plaintiff's intellectual foundation was markedly impacted by his relative weaknesses in working memory and processing speed, and Plaintiff had a poor ability to retain number strings (Pl. Br. 16; Tr. 318–19). While wanting to return to his mother or play with toys during testing shows some degree of limitation in attending and completing tasks, deficits in Plaintiff's intellectual foundation and ability to retain number strings goes to the separate domain of acquiring and using information. *Compare* 20 C.F.R. § 416.926a(g) *with* 20 C.F.R. § 416.926a(h). Thus, Plaintiff's argument does not show that the ALJ's finding of less than a marked limitation in attending and completing tasks lacked substantial evidence. *See Lax*, 489 F.3d at 1084.

Dr. Jacobs herself indicated this was a "[c]omplicated case given inconsistent data points," and she concluded that Plaintiff was "only markedly limited in attending and completing tasks" (Tr. 62). Here, the ALJ found that based on the evidence that Plaintiff's marked limitation was more appropriately assigned to the domain of acquiring and using information (Tr. 16–17). *See* 20 C.F.R. § 416.926a(g). Thus, while a different factfinder might have reached a different conclusion, the ALJ reasonably found based on substantial evidence, including Dr. Huebner's prior

14

administrative medical finding, that Plaintiff had a less than marked limitation in the attending and completing task domain. *See Lax*, 489 F.3d at 1084.

> 2. *The ALJ reasonably found that Dr. Nichols's consultative examination did not show a marked limitation in acquiring and using information.*

As explained above, the ALJ stated that he found the opinion of consultative examiner Dr. Nichols persuasive but somewhat vague (Tr. 18, 320). The ALJ noted that Dr. Nichols found that Plaintiff's ability to follow two- to four-step instructions was suspect, especially with regard to verbally-mediated information; he would benefit from applied structure and learning strategies; and he was at risk of demonstrating acting out behaviors (Tr. 18, 320). When the ALJ discussed his consideration of the state agency prior administrative medial findings, the ALJ also noted that except for some loss in focus, Dr. Nichols did not observe many other findings in the domain of attending and completing tasks that would limit Plaintiff (Tr. 18, 318–20). The ALJ explained that with specialized attention, Plaintiff has shown improvement in overall functioning but still has problems learning information (Tr. 18, 296–98, 321–24).

Plaintiff argues that Dr. Nichols' findings required a marked limitation in acquiring and using information (Pl. Br. 16–17). However, the ALJ reasonably found that Dr. Nichols's conclusions were somewhat vague (Tr. 18), and state agency reviewer Dr. Huebner thought that the evidence, including Dr. Nichols's report, indicated a less than marked limitation in acquiring and using information (Tr. 52–54). While Dr. Jacobs concluded that the bulk of the evidence indicated Plaintiff was more limited (Tr. 62, 64), reasonable minds could interpret Dr. Nichols' report differently, and as explained above, the ALJ's findings are supported by substantial evidence. Plaintiff's argument therefore fails to demonstrate reversible error.

3. *The ALJ discussed all of the evidence and did not engage in cherry picking.*

Plaintiff contends that the ALJ cherry picked the opinion evidence and did not explain how any material inconsistencies or ambiguities in the record were considered or resolved (Pl. Br. 18-19). Plaintiff failed to adequately develop this argument, and the court therefore declines to address it. *See Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine."). In any event, the ALJ discussed all of the relevant evidence, favorable and unfavorable, and simply found the overall record did not support the marked limitation in Dr. Jacobs's opinion. Relying on the record as a whole is not cherry picking. *See Romo v. Comm' r, Soc. Sec. Admin.*, 748 F. App' x 182, 186 (10th Cir. 2018) (rejecting the argument that the ALJ substituted his own medical judgment for the doctor' s when he discounted the opinion based on the doctor's examination findings: "We disagree. The ALJ simply determined that [the doctor's] sitting, standing, and walking limitations were not supported by objective evidence, which is a legitimate basis for the ALJ to afford the opinion less weight."); *see also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). In sum, Plaintiff has failed to show any reversible error.

### IV.   CONCLUSION

Because the ALJ's decision is supported by substantial evidence and free from reversible error, it is hereby AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 20 March 2023.

_____
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah